UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SMITH,

                    Petitioner,                     Case Number: 12-15417
                                                    HON. AVERN COHN
v.

MITCH PERRY,

                    Respondent.
_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner David Smith

(Petitioner) is a state inmate at the Newberry Correctional Facility in Newberry,

Michigan.  Petitioner filed a pro se petition for a writ of habeas corpus challenging his

convictions for involuntary manslaughter with a motor vehicle, intimidating a witness in a

criminal case punishable by more than ten years' imprisonment, and reckless driving.

Respondent, through the Attorney General's office, filed a response, arguing that

Petitioner's claims are procedurally defaulted and/or without merit.  For the reasons

which follow, the petition will be denied.

### II. Background

### A. Facts

Petitioner's convictions arise from a traffic accident that resulted in the death of

Diane Sigers and serious injuries to Nicole Wolfe.  The Michigan Supreme Court

described the circumstances surrounding the accident as follows:

> This case stems from an automobile collision in Jackson County in June 2007.  Defendant was driving his 1993 Cadillac with three passengers, including Nicole Wolfe, who sat in the front passenger seat.  Wolfe testified that defendant drove recklessly and at a high rate of speed when he pulled into a lane of oncoming traffic as a green truck approached.  When Wolfe screamed in fear, defendant indicated that the truck would pull off the road.  Thomas Lantz, the driver of the green truck, observed defendant driving toward his truck at a high rate of speed.  Lantz testified that he pulled over as far as he could, but was unable to move completely off of the road because road construction precluded it.  At the last moment, defendant swerved back into the proper lane, avoiding the collision with the truck.
>
> After the near collision with Lantz's truck, defendant accelerated through the construction zone and crested a hill.  A short distance away, the victim, Diane Sigers, sat in her compact automobile, attempting to make a left turn from a cross street.  Wolfe testified that she could see the side of the victim's car and her head as defendant's car approached.  Wolfe again screamed, telling defendant that the victim's car would not clear the road in time.  Defendant assured her that the car would get out of his way, and further increased his speed.  Wolfe remembered that defendant applied the brakes just before impact, but was too late to avoid colliding with Sigers at a high rate of speed.  The forensic pathologist testified that the victim died within a few seconds after the collision because of the massive injuries she sustained.
>
> Wolfe spent two days in the hospital, having suffered six fractured ribs, a ruptured spleen, and a bruised heart in the collision.  After she was discharged from the hospital, defendant began contacting her via telephone.  Defendant told Wolfe that she "shouldn't talk to anybody" because "there was no proof of anything" and that defendant "was innocent" as long as Wolfe remained quiet.  Defendant told Wolfe that if he could not "take care of the problem," then he would "have somebody else do it for" him.  As a result of such statements, Wolfe was initially reluctant to speak with the police.  Eventually, Wolfe did speak with the police, relaying what she recalled from before the collision, as well as defendant's statements to Wolfe after she was released from the hospital.

People v. Smith, 488 Mich. 193, 195-96 (Mich. 2010).

## B.  Procedural History

Following a jury trial in Jackson County Circuit Court, Petitioner was convicted of

the offenses described above.  On May 29, 2008, the trial court sentenced Petitioner as a second habitual offender to 10 to 22 years' imprisonment for the vehicular manslaughter conviction, 5 to 15 years' imprisonment for the interfering with a witness conviction, and 93 days in jail for the reckless driving conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) conviction for witness intimidation was not supported by sufficient evidence; (ii) offense variables 9 and 19 incorrectly scored; and (iii) trial court failed to offer substantial and compelling reasons for upward departure from sentencing guidelines for witness intimidation conviction.  The Michigan Court of Appeals affirmed Petitioner's convictions but held that offense variable 19 was incorrectly scored for conduct that occurred after the offense, resulting in a minimum sentence for the involuntary manslaughter conviction that was outside the guidelines range.  The court of appeals also "express[ed] concern" that the witness intimidation sentence might be disproportionate because, with the revised scoring of offense variable 19, the sentence exceeded the guidelines.  The court of appeals remanded the case to the trial court for resentencing on the manslaughter charge and reconsideration of the proportionality of the witness intimidation sentence.  People v. Smith, No. 286479, 2009 WL 3930595 at *7-8.

The Michigan Supreme Court granted the State's application for leave to appeal, limited to the question of whether offense variable 19 was correctly scored.  The Michigan Supreme Court reversed the Michigan Court of Appeals' decision, finding that offense variable 19 may be scored for conduct that occurred after the sentencing offense was complete.  People v. Smith, 488 Mich. 193, 195 (Mich. 2010).

3

Petitioner then filed a motion for relief from judgment, he raised these claims: (i) defense counsel was ineffective for failing to call key defense witnesses, make an independent examination of the facts and pursue relevant leads; (ii) trial counsel erred in denying request for substitute counsel; (iii) trial court abused its discretion in denying jury's request to see the accident scene; (iv) trial judge was not impartial; and (v) Michigan Supreme Court violated the Ex Post Facto Clause by ruling that offense variable 19 may be scored for conduct that occurred after sentencing.  The trial court denied the motion.  10/13/11 Opinion and Order Following Defendant's Motion for Relief from Judgment, No. 07-004218-FH (Jackson County Cir. Ct.).  Petitioner's applications for leave to appeal to the Michigan Court of Appeals and Michigan Supreme Court were both denied.  People v. Smith, No. 306869 (Mich. Ct. App. Feb. 3, 2012); People v. Smith, 493 Mich. 855 (Mich. 2012).

Petitioner then filed the pending habeas corpus petition.  He raises these claims:

I.     Petitioner's conviction for witness intimidation must be vacated because it was supported by legally insufficient evidence.

II.    Petitioner is entitled to resentencing where the sentencing guidelines range was incorrectly calculated under offense variable 9 and 19, violating the state and federal due process right to sentencing based upon accurate information.

III.   Petitioner's sentence as to witness intimidation is invalid because the sentencing court failed to state objective and compelling reasons in support of the departure and the extent of the departure.

IV.   Petitioner's convictions and sentences must be vacated and reversed because he suffered ineffective assistance of trial counsel by counsel's failure to call key defense witnesses, and for his failure to make an independent examination fo the facts, circumstances, pleadings, and laws involved, including failure to pursue all leads relevant to the merits of the case, denying Petitioner his constitutional right to present a defense.

4

V.      The trial court abused its discretion when denying Petitioner's explicit request to be represented by different defense counsel, when Petitioner has unpleasant experiences with this particular attorney in the past, in which mistrust, and a serious breakdown in the attorney/client relationship occurred.

VI.     The trial court abused its discretion and denied Petitioner his rights to a fair trial commanded by the Sixth and Fourteenth Amendments to the United States Constitution, when it denied the jury's request to see the accident scene first hand, depriving Petitioner of his fundamental right to have the jury serve as the sold trier of fact and evidence with regard to Petitioner's guilt or innocence.

VII.    Petitioner was denied his constitutional right to a fair and impartial trial where he lacked an impartial trial judge.

VIII.   Has an Ex Post Facto violation occurred in this case with regard to the Michigan Supreme Court's reversal essential to Petitioner's sentence as imposed?

## III.  Standard

Petitioner's claims are reviewed against the following standards:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

5

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor,

529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute

permits a federal habeas court to 'grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case."  Wiggins v. Smith, 539 U.S. 510, 520 (2003)

(quoting Williams, 529 U.S. at 413).  However, "[i]n order for a federal court to find a

state court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous.  The state court's

application must have been 'objectively unreasonable.'"  Wiggins, 539 U.S. at 520-21

(citations omitted); see also Williams, 529 U.S. at 409.  "A state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

could disagree' on the correctness of the state court's decision."  Harrington v. Richter,

562 U.S. 86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme

malfunctions in the state criminal justice systems, not a substitute for ordinary error

correction through appeal. . . . As a condition for obtaining habeas corpus from a federal

court, a state prisoner must show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  Id. at 102-03 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with clearly established federal law as

6

determined by the Supreme Court at the time the state court renders its decision.  See Williams, 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.  Discussion

### A.  Procedural Default

Although Respondent argues many of Petitioner's claims are procedurally defaulted, it is not necessary to address the issue of procedural default.  Procedural default is not a jurisdictional bar to review of the merits of an issue, Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)).  Application of a procedural bar would not affect the outcome of

7

this case, and it is more efficient to proceed directly to the merits.  As such, Petitioner's claims are discussed in turn below.

### B.  Sufficiency of the Evidence

In his first claim, Petitioner says that insufficient evidence was presented to support his conviction for witness intimidation.  He argues that the Michigan Court of Appeals' decision denying his sufficiency of the evidence claim was an unreasonable application of Jackson v. Virginia, 443 U.S. 307, 319 (1979).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).  In the habeas context, "[t]he Jackson standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v. Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205 (citing Jackson, 443 U.S. at

8

319)).  Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id.

Under Mich. Comp. Laws § 750.122(3), a person is guilty of witness intimidation if the person does one of the following:

> (a)    Discourage or attempt to discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding, or giving information at a present or future official proceeding.
>
> (b)    Influence or attempt to influence testimony at a present or future official proceeding.
>
> (c)    Encourage or attempt to encourage any individual to avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding.

Mich. Comp. Laws § 750.122(3).  Under this statute, "criminal liability attaches if the person *knows or has reason to know* the other person could be witness at any official proceeding."  People v. Greene, 661 N.W.2d 616, 626 (Mich. Ct. App. 2003) (emphasis in original).

The Michigan Court of Appeals held that sufficient evidence was presented to sustain Petitioner's conviction, reasoning, in relevant part:

> Viewing the record evidence in the light most favorable to the prosecution, there was sufficient evidence presented at trial to support defendant's conviction for witness intimidation beyond a reasonable doubt.  Wolfe, supra at 514–515, 489 N.W.2d 748.  According to Wolfe, defendant repeatedly discouraged her from providing information about the accident, and indicated that the police would not have any evidence against him unless she spoke with them.  Defendant threatened Wolfe: "if I can't take care of the problem, then I'll have somebody else do it for me."  He made this statement in the context of indicating to her that as long as she did not

talk with the police, the police would not have proof of any wrongdoing, and it was clear to Wolfe that defendant understood that she could be a witness in a criminal case, as an investigation was being conducted.  As a result, Wolfe testified that she was scared and reluctant to speak with the police or the prosecution.  Thus, defendant, by threat or intimidation, attempted to discourage Wolfe from providing information to the police and the prosecution. M.C.L. 750.122(3).  Moreover, based on Wolfe's testimony regarding the context of defendant's statements and the fact that defendant knew there was an ongoing investigation into the crash, the evidence supported that defendant knew or had reason to know that Wolfe could be a witness against him in a future official proceeding. M.C.L. 750.122(9).  The witness intimidation statute applies regardless whether there was a pending proceeding or whether Wolfe had been ordered to appear in court.  M.C.L. 750.122(9);  Greene, supra at 442, 661 N.W.2d 616.

Defendant's arguments as to other passengers not claiming that they were intimidated or that his statement was merely open to Wolfe's interpretation, fail to take into account that we must view the evidence in the light most favorable to the prosecution, Wolfe, supra at 514-515, 489 N.W.2d 748, and make credibility choices regarding Wolfe's testimony in support of the jury's verdict, Nowack, supra at 400, 614 N.W.2d 78.  In addition, only minimal circumstantial evidence was required to prove defendant's intent to intimidate or threaten Wolfe.  Where he warned her not to speak with police, and if she did, he would take care of "the problem," the intent was proved.  People v. Hawkins, 245 Mich. App. 439, 458, 628 N.W.2d 105 (2001).  We similarly reject defendant's contention that the knowledge requirement could not begin until his arrest or arraignment.  The plain language of M.C.L. 750.122(9) dictates that this statute "applies regardless of whether an official proceeding actually takes place or is pending."  Roberts v. Mecosta Co. Gen. Hosp., 466 Mich. 57, 63, 642 N.W.2d 663 (2002).  Whether an official proceeding is actually pending is not an element of the offense.  Moreover, the language of M.C.L. 750.122 also does not set forth the specific moment when a person is deemed to know or have reason to know that another person could be a witness at an official proceeding, and we decline to read such a provision into the statute.  Id.  Accordingly, there was sufficient evidence presented at trial for a jury to find beyond a reasonable doubt that defendant had violated M.C.L. 750.122(7)(b).

Smith, 2009 WL 3930595 at *3.

Petitioner argues there was no proof of witness intimidation because his

statements were benign and simply misinterpreted by Wolfe.  In support of this

10

argument, he argues that he visited Wolfe in the hospital and at home, obviously

concerned for her well-being, and that Wolfe herself testified that she and Petitioner

were good friends.  Petitioner's friendship with Wolfe and his apparent concern for her

well-being, however, do not negate any element of the offense.  In addition, the

testimony presented supported a finding that Petitioner knew or had reason to know that

Wolfe could be a witness in a criminal proceeding.  The state court applied the correct

constitutional test, relied on facts amply supported in the record, and did not

unreasonably apply clearly established constitutional law.  Petitioner is therefore not

entitled to habeas relief with respect to this claim.

### C.  Sentencing-Related Claims

Petitioner's second and third claims for relief concern his sentence.  He argues

that the trial court incorrectly scored offense variables 9 and 19, and that the trial court

failed to provide substantial and compelling reasons for its upward departure from the

sentencing guidelines for the witness intimidation offense.

A sentence violates due process if it is based on "misinformation of constitutional

magnitude[,]"  Roberts v. United States, 445 U.S. 552, 556 (1980), or "extensively and

materially false" information, which the defendant had no opportunity to correct.

Townsend v. Burke, 334 U.S. 736 (1948).  "Townsend and its progeny are generally

viewed as having established a due process 'requirement that a defendant be afforded

the opportunity of rebutting derogatory information demonstrably relied upon by the

sentencing judge, when such information can in fact be shown to have been materially

false.'"  Stewart v. Erwin, 503 F.3d 488, 495 (6th Cir. 2007) (quoting Collins v. Buchkoe,

493 F.2d 343, 345 (6th Cir. 1974)).

Petitioner disagrees with the trial court's scoring of these offense variables, but has not shown that the trial court relied on "extensively and materially false" information that he had no opportunity to correct.  Townsend, 334 U.S. 736, 741 (1948).  The trial court's determination of the facts was reasonable.  28 U.S.C. § 2254(d)(2).  The Michigan Supreme Court held that offense variable 19 was correctly scored, and the Michigan Court of Appeals held that offense variable 9 was correctly scored under Michigan law.  In addition, Petitioner's sentences are within the statutory maximum penalties for the convicted offenses.  Accordingly, no deprivation of due process occurred, and Petitioner is not entitled to habeas relief on this claim.

Further, Petitioner is not entitled to relief based on his claim that the trial court improperly departed upward from the sentencing guidelines for the witness intimidation sentence without articulating substantial and compelling reasons for departing.  "The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  Wilson v. Corcoran, 562 U.S. 1, __, 131 S. Ct. 13, 16 (2010), quoting 28 U.S.C. § 2254(a).  The requirement that a sentencing court articulate a "substantial and compelling reason" for departure from the sentencing guidelines is found in Michigan, not federal, law.  See Michigan Compiled Laws § 769.34(3).  Whether a state court judge articulates substantial and compelling reasons for departing from the sentencing guidelines is a matter of state law.  Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); see also McPhail v. Renico, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).  "[A] mere error of state law is not

a denial of due process." <u>Swarthout v. Cooke</u>, 562 U.S. 216, 222 (2011) (internal quotations omitted).  Thus, this claim is not cognizable on federal habeas review.

### D.  Ineffective Assistance of Counsel Claims

Petitioner also seeks habeas relief on the grounds that his trial attorney rendered ineffective assistance.  Specifically, he argues that his attorney was ineffective in failing: (1) to call Michael Smith as a defense witness; (2) to interview key witnesses, (3) to call an expert witness for the defense; (4) to take and introduce photographs of the accident scene; and (5) to investigate Petitioner's past driving record.

The standard for obtaining habeas corpus relief is "'difficult to meet.'"  <u>White v. Woodall</u>, — U.S. —, 134 S. Ct. 1697, 1702 (2014), <u>quoting Metrish v. Lancaster</u>, 569 U.S. —, —, 133 S. Ct. 1781, 1786 (2013).  In the context of an ineffective assistance of counsel claim under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." <u>Harrington</u>, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard."  <u>Id.</u>

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  <u>Id.</u> at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

13

the Sixth Amendment." Id. at 687.  "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Wiggins v. Smith, 539 U.S. 510, 521 (2003), quoting Strickland, 466 U.S. at 688 (internal quotations omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

The trial court denied Petitioner's ineffective assistance of counsel claims on collateral review, finding the claims lacked any proof in support.  For example, the trial court noted that Petitioner argued defense counsel should have called Michael Smith as a defense witness, but failed to provide an affidavit or any other offer of proof as to what Smith's testimony would have been.  Petitioner also failed to provide this Court with an affidavit.  Absent any indication from a source other than Petitioner as to what Smith's testimony would have been, Petitioner cannot show that he was prejudiced by his attorney's failure to call this witness.

14

Petitioner also argues that counsel was ineffective in failing to interview witnesses.  But, he fails to identify these unnamed witnesses or provide any information regarding what their testimony would have been.  Petitioner's unsupported reference to additional witnesses, without more, is insufficient to establish counsel's ineffectiveness.

Petitioner argues counsel was ineffective in failing to call an expert witness in accident reconstruction to rebut the prosecution's expert witness testimony, despite having retained an expert witness.  "Strickland does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense."  Harrington, 562 U.S. at 111.  Often, "cross-examination will be sufficient to expose defects in an expert's presentation."  Id.  Petitioner fails to show that a different accident reconstruction expert would have called into question the prosecution witness's testimony.  Indeed, where Petitioner has offered nothing to rebut this presumption, the Court presumes that defense counsel's retained expert witness was not called as a witness because his testimony would not have assisted the defense.

Finally, Petitioner next argues that counsel was ineffective in failing to take and introduce photographs of the accident scene and to investigate Petitioner's past driving record.  Petitioner fails to offer anything other than bare allegations to support his argument.  He does not explain how defense counsel's accident scene photographs would have assisted the defense or have depicted the scene differently than in the photographs introduced by the prosecution.  He also fails to offer any evidence that his past driving record was without incident such that it would have aided in his defense.

In sum, the Court finds the state court's denial of Petitioner's ineffective

15

assistance of counsel claims is in accordance with <u>Strickland</u>.  Petitioner's allegations are conclusory, lacking in factual support, and fall far short of satisfying the doubly deferential standard for habeas relief.

### E.  Request for Substitute Counsel

Petitioner next argues that the trial court erred in failing to appoint him substitute counsel.  Petitioner claims substitute counsel was necessary because defense counsel represented him on a breaking and entering charge four years prior to this case.  He alleges that counsel provided inadequate representation on the earlier case by failing to investigate and present witnesses.  Petitioner argues that he asked defense counsel to file a motion for substitute counsel in this case based upon their prior history, but counsel refused.[1]  He claims that he and defense counsel suffered a breakdown in the attorney-client relationship based upon their history.

The Sixth Amendment guarantees an accused in all criminal prosecutions the right to the assistance of counsel in his defense, and  and gives an indigent criminal defendant the right to the assistance of court-appointed counsel.  <u>See Gideon v. Wainwright</u>, 372 U.S. 335, 343 (1963). "[T]he purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial.'"  <u>Wheat v. U.S.</u>, 486 U.S. 153, 159 (1988), <u>quoting Strickland v. Washington</u>, 466 U.S. 668, 689 (1984). "[I]n evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the

---

[1]  In his petition, Petitioner argued that he made an "explicit request" of the court to be represented by different counsel.  Petition at 20.  However, in his reply brief, he conceded that he made no such specific request of the court.  He states that he, instead, asked defense counsel to file a motion for substitute counsel and that defense counsel refused to do so.  Reply brief at 14.

adversarial process, not on the accused's relationship with his lawyer as such.'" Id., quoting U.S. v. Cronic, 466 U.S. 648, 657 n.21 (1984). Further, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id.

The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel. See Morris v. Slappy, 461 U.S. 1, 14 (1983). Thus, "when a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." Ray v. Curtis, 21 F. App'x 333, 335 (6th Cir. 2001). This is so because "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989).

In this case, Petitioner raised this claim for the first time in his motion for relief from judgment. The trial court denied the claim because Petitioner failed to make a formal request for substitute counsel and because he failed to "argue a legitimate difference of opinion over a fundamental trial tactic" and expressed "nothing more than dissatisfaction with counsel's performance in a previous case rather than a specific disagreement of fundamental import in the instant case." 10/13/11 Opinion and Order Following Defendant's Motion for Relief from Judgment at 3.

The record supports the trial court's finding that Petitioner failed to express dissatisfaction with counsel on the record and failed to formally move for substitute counsel. In addition, other than general references to dissatisfaction with his counsel he

17

has not shown that counsel was ineffective, nor has he shown he was prejudiced by any breakdown in the attorney-client relationship. Habeas relief is not warranted on this claim.

### F. Denial of Jury's Request to View Accident Scene

Petitioner next raises a claim that the trial court denied him his right to present a defense in declining the jury's request to view the accident scene. During deliberations, the jurors submitted several questions to the court. After addressing these questions, the trial court noted that "at least one of you indicated to the court officer some desire to see the scene, and at this point the proofs are closed." Tr., 3/12/08 at 123. The trial court explained that jury views of accident scenes sometimes occur, but they occur during the presentation of evidence. The trial court also cautioned that the jurors were not permitted to undertake an accident scene visit by themselves.

"'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Ege v. Yukins, 485 F.3d 364, 375 (6th Cir. 2007) quoting Estelle v. McGuire, 502 U.S. 62, 68 (1991)). The standard of review is therefore "very deferential" on claims regarding the admission of evidence in state court. Hudson v. Lafler, 421 F. App'x 619, 627 (6th Cir. 2011). An evidentiary ruling violates due process only where it "is so egregious that it results in a denial of fundamental fairness." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). "'[T]he Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.'" Shoemaker v. Jones, — F. App'x —, 2015 WL 480233 at *4, quoting Holmes v. South Carolina, 547 U.S. 319, 326-27 (2006). But, the Supreme Court has emphasized that "the Due

18

Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438 n. 6 (1983).

In denying Petitioner's motion for relief from judgment, the trial court held that the jury view was properly denied because Petitioner showed no prejudice from the court's evidentiary ruling, the trial occurred nine months after the accident occurred, and Petitioner did not even claim that the conditions at the accident scene had remained the same.  10/13/11 Opinion and Order Following Defendant's Motion for Relief from Judgment at 3-4.

There was ample evidence submitted at trial about the scene of the crash such that the trial court's denial of the jury's late request to view the scene did not render Petitioner's trial unfair.  Petitioner has failed to provide any persuasive reason why the Michigan trial court's evidentiary ruling was "so egregious that it results in a denial of fundamental fairness ... and thus warrant[s] habeas relief." <u>Bugh</u>, 329 F.3d at 512.

### G.  Judicial Bias Claim

Petitioner argues that he was denied his right to a fair trial by several of the trial court's rulings which, Petitioner claims, evidence judicial bias.  Petitioner claims that the trial court's bias is evident in its denial of his "specific request" to be represented by different counsel, failure to <u>sua sponte</u> consider a change of venue based on pretrial publicity, and statements during sentencing that, if the victim's family agreed, the sentence would include a provision requiring Petitioner to have a picture of the deceased victim in his prison cell for the duration of his confinement (though Petitioner concedes that this provision was not included in the judgment of sentence).

19

An impartial judge is a necessary component of a fair trial.  In re Murchison, 349

U.S. 133, 136 (1955).  The Supreme Court established the standard for assessing

claims of judicial bias in Liteky v. United States, 510 U.S. 540 (1994).  The Supreme

Court explained the measure of judicial conduct as follows:

> [O]pinions formed by the judge on the basis of facts introduced or events
> occurring in the course of the current proceedings, or of prior proceedings,
> do not constitute a basis for a bias or partiality motion unless they display
> a deep-seated favoritism or antagonism that would make fair judgment
> impossible.  Thus, judicial remarks during the course of a trial that are
> critical or disapproving of, or even hostile to, counsel, the parties, or their
> cases, ordinarily do not support a bias or partiality challenge.  They *may*
> do so if they reveal an opinion that derives from an extrajudicial source;
> and they *will* do so if they reveal such a high degree of favoritism or
> antagonism as to make fair judgment impossible.

Id. at 554.

The Supreme Court cautioned that "expressions of impatience, dissatisfaction,

annoyance, and even anger, that are within the bounds of what imperfect men and

women, even after having been confirmed as federal judges, sometimes display," do not

establish bias or partiality.  Id. at 556.

The trial court denied this claim, finding that Petitioner's arguments were

insufficient because Petitioner simply listed court rulings with which he disagreed.

10/13/11 Opinion and Order Following Defendant's Motion for Relief from Judgment at

4.  On habeas review the inquiry focuses on whether the trial court's conduct rendered

the trial fundamentally unfair.  "To violate a defendant's right to a fair trial, a trial judge's

intervention in the conduct of a criminal trial would have to reach a significant extent and

be adverse to the defendant to a substantial degree."  McBee v. Grant, 763 F.2d 811,

818 (6th Cir. 1985).  Although Petitioner disagrees with many of the trial court's rulings,

20

he has not shown that the trial court relied on extrajudicial sources in rendering his

decisions or that he showed any degree of favoritism for the prosecution or antagonism

for the defense.  Rather, the trial transcript shows that the trial court ruled carefully on

objections.  The Court sees no bias in the trial court's comments or conduct.  This is not

a case where the trial court could, in any sense, be said to have indicated "a hostility to

one of the parties, or an unwarranted prejudgment of the merits of the case, or an

alignment on the part of the Court with one of the parties for the purpose of furthering or

supporting the contention of such party."  Knapp v. Kinsey, 232 F.2d 458, 465-67 (6th

Cir. 1956).  In addition, the trial court's reference at sentencing to placing a picture of

the victim in the Petitioner's cell did not show that the trial court was biased.  The

remark was made in response to Petitioner's comments at sentencing to the victim's

family, which the trial court felt failed to acknowledge responsibility or appreciate the

depth of the victim's family's loss.  The trial court's response, even if reflective of

irritation, does not support a finding of judicial bias.  Habeas relief is denied on this

claim.

### H.  Ex Post Facto Violation

Finally, Petitioner argues that the Michigan Supreme Court violated his rights

under the Ex Post Facto Clause in holding that conduct that occurred after an offense

was completed may be considered when scoring offense variable 19.  Petitioner was

scored 15 points for offense variable 19.

The Ex Post Facto Clause provides that "no State shall . . . pass any . . . ex post

facto Law."  U.S. Const. art. I, § 10, cl. 1.  The Clause prohibits legislative enactment of

any law that "'changes the punishment, and inflicts a greater punishment, than the law

21

annexed to the crime, when committed.'" Rogers v. Tennessee, 532 U.S. 451, 456 (2001), quoting Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798). The Ex Post Facto Clause "'does not of its own force apply to the Judicial Branch of government.'" Id., quoting Marks v. United States, 430 U.S. 188, 191 (1977). However, Petitioner may challenge a judicial decision on ex-post-facto grounds under the Due Process Clause. Ruhlman v. Brunsman, 664 F.3d 615, 620 (6th Cir. 2011). "[L]imitations on ex post facto decisionmaking are inherent in the notion of due process," Rogers, 532 U.S. at 456, and focus on "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." Id. at 459. When assessing whether a judicial interpretation of criminal law "violates these concerns, the relevant consideration is whether that decision is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" Ruhlman, 664 F.3d at 620, quoting Rogers, 532 U.S. at 462.

In People v. McGraw, 488 Mich. 193 (2010), the Michigan Supreme Court held that "[o]ffense variables must be scored giving consideration to the sentencing offense alone, unless . . . [the offense variable] provide[s] for consideration of conduct after completion of the sentencing offense." Id. at 133-34. The Michigan Supreme Court in this case held that the plain language of offense variable 19 specifically provided for the "consideration of conduct after completion of the sentencing offense" (in this case, the sentencing offense of manslaughter) and, therefore, was correctly scored in Petitioner's case. People v. Smith, 488 Mich. at 201-02. The Michigan Supreme Court's decision did not punish Petitioner for conduct that had not been criminal when he committed it.

22

Nor was the state court's interpretation of offense variable 19 unforeseeable.  In People v. Barbee, 470 Mich. 283, 286-87 (Mich. 2004), the Michigan Supreme Court upheld the scoring of points for offense variable 19 for conduct (giving police officer a false name) occurring after the sentencing offense (operating a motor vehicle while intoxicated). That opinion preceded Petitioner's crime by three years.  Thus, Petitioner is not entitled to habeas relief on this claim and his due process rights were not violated.

### V.  Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED.  Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DENIES a certificate of appealability under 28 U.S.C. § 2253(c)(2).  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

       S/Avern Cohn                  

       AVERN COHN

       UNITED STATES DISTRICT JUDGE

Dated:  April 8, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 8, 2015, by electronic and/or ordinary mail.

       S/Sakne Chami           

       Case Manager, (313) 234-5160